# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KEVIN ANDREW JAURON,<br><br>Defendant. | Case No. 14-MJ-142<br><br>ORDER FOR PRETRIAL DETENTION |

On the 29th day of October, 2014, this matter came on for hearing on the Government's request to have the Defendant detained pending further proceedings and the Defendant's request for a preliminary hearing. The Government was represented by Assistant United States Attorney Peter E. Deegan, Jr.. The Defendant appeared personally and was represented by his attorney, John D. Jacobsen.

## I. RELEVANT FACTS AND PROCEEDINGS

On May 12, 2014, Defendant Kevin Andrew Jauron was charged by Criminal Complaint (docket number 2) with production of child pornography. At the hearing, Sergeant Lance Miller of the Marion Police Department testified regarding the circumstances underlying the instant charge.

On May 9, 2014, Sergeant Miller was contacted by the Marion High School regarding a report that two students told a teacher that they had been solicited to engage in sexual activity by an adult. Miller went to the high school that day and met with "A.R." and "S.M.," both 15-year-old girls. The girls reported that they had been contacted by "Kevin," who they believed was 34 years old.

Sergeant Miller first spoke separately with S.M., who reported that she believed A.R. had engaged in sexual activity with Kevin. According to S.M., she had seen two

photos of A.R. and Kevin engaged in oral sex. S.M. received the photos from "Shelby Bartling," who investigators later determined was a fake persona being used by Defendant. The photos were sent using "photobomb," which causes the photos to disappear after some period of time. Accordingly, when Miller examined S.M.'s phone, he saw the accompanying text, but the photos were replaced by a "photo icon."

S.M. also reported to Sergeant Miller that A.R. admitted having sex with Kevin in exchange for money. S.M. also received text messages from Kevin soliciting sex. S.M. told Kevin, whom she had never met in person, that she was 15 years old. Miller observed text messages on S.M.'s phone involving a three-way conversation between S.M., Kevin, and "Shelby," discussing sex and the purchase of alcohol.

Sergeant Miller then spoke with A.R., with her parents present. A.R. told Miller that she did not remember having sex with Kevin, but she knew it happened because there were photos. A.R. suggested that she may have been "drugged," although Miller does not believe that A.R. had been drugged. A.R. denied that she engaged in sex for money. When confronted with a text message suggesting otherwise, she admitted sending the message but said she "didn't go through with it." A.R. told Miller that she sent two photos to "Shelby," depicting sex acts between her and Kevin. A.R. provided Miller with phone numbers for Kevin and "Shelby." The phone number for Kevin came back as associated with Defendant Kevin Jauron. The phone number for "Shelby" was a "burner phone."

Based on information received from S.M. and A.R., and the phone number connecting Defendant, a state search warrant was obtained for Defendant's residence and person. The search warrant was executed the following day, on May 10. Sergeant Miller testified that the house was being surveilled and when Defendant, his fiancé, and their young son left in a vehicle, Miller conducted a vehicle stop. Defendant initially admitted knowing A.R. as a "friend" and said he knew S.M. and "Shelby Bartling" online. At

2

Miller's request, Defendant consented to a search of his phone. Miller found text messages between Defendant and A.R., and found incriminating photos in the photo gallery.

When Sergeant Miller confronted him, Defendant admitted that he had oral sex with A.R. approximately one month earlier. Defendant said he believed A.R. was 16 years old. At that time, Defendant told Miller that A.R. had taken the photographs found on his phone. Defendant admitted that "Shelby Bartling" was a fake persona and said Bartling's phone could be found in his car in his garage.

Defendant was then handcuffed and transported back to his residence in Sergeant Miller's unmarked car. Upon arriving at the residence, Defendant was *Mirandized*. A search of Defendant's car at his residence disclosed the Bartling phone. Detective Howard downloaded the contents of the phone at the scene, and officers located a photograph of A.R. performing oral sex on an adult male and a second photograph of Defendant performing oral sex on a female. When Miller pointed out that it was obvious A.R. could not have taken the photographs, Defendant admitted that he took the photographs. He also said there may be a 10-second video.

Upon further examination, Sergeant Miller discovered that "Shelby Bartling" had corresponded with "S.W." online. At that time, S.W. was 15 years old and "Shelby" was identified as a 17-year-old bi-sexual female. "Shelby" asked S.W. to provide nude photographs, and S.W. complied. "Shelby" then asked for more photographs of S.W.'s vaginal area, with her legs spread apart. "Shelby" also asked S.W. about having three-way sex with Kevin.

"Shelby" also sent nude photographs of a minor female to S.W. Upon investigation, Sergeant Miller discovered that the minor female in the photographs was "V.C.," who was 15 years old at the time the photos were taken. V.C. admitted that she had sent nude photographs to "Irma Alec," who she knew only online. "Irma" identified

herself as a minor female. V.C. had never heard of Kevin Jauron. According to Miller, investigators have "linked" "Irma Alec" to Defendant.

Sergeant Miller recently interviewed "K.W.," who was identified from text messages on "Shelby Bartling's" phone as having a sexual relationship with Defendant. K.W., who was 16 at the time, admitting having intercourse with Defendant at his home. According to K.W., Defendant left $500 on the dresser, but she did not take it. K.W. believes that Defendant took a video of their sexual activity.

Defendant's prior criminal record shows a sexual interest in teenage girls. In 2005, Defendant was convicted in separate incidents of harassment in the third degree when he sent emails soliciting sex acts. One of the victims was a 13-year-old girl. In 2007, Defendant was bowling with a 15-year-old female, when they went out to the car to get alcohol. The victim reported that Defendant inserted his fingers in her vagina. Defendant was initially charged with sexual abuse, third degree, but pleaded guilty to assault causing bodily injury and harassment in the second degree.

As a result of the investigation on May 9 and 10, 2014, Defendant was charged in state court with a sex offender registry violation and dissemination of obscene material to minors. Count 2 was dismissed on May 23 (after the complaint was filed in federal court on May 12) and the trial on Count 1 remains pending. It's the Court's understanding that when Defendant posted bond on Count 1 in state court, he was arrested in the instant action on October 24.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

4

## A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

5

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not

6

disappear entirely, but remains a factor to be considered among those weighed by the court. *Id.* *See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with production of child pornography, in violation of 18 U.S.C. § 2251(e). By definition, this is a crime of violence. *See* 18 U.S.C. § 3156(a)(4)(C). Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to 18 U.S.C. § 3142(f)(1)(A).

Regarding the second step, there is a rebuttable presumption that Defendant should be detained pending further proceedings. The weight of the evidence is strong. Photos depicting a minor engaged in sexual activity were found on Defendant's phone, and Defendant admits that he took them. Defendant's criminal record demonstrates that he has a persistent and ongoing sexual interest in teenage girls. Of particular concern to the Court is the fact that Defendant has used one or more false identities online while attempting to solicit nude photographs and sexual activity with minor females. While the investigation is ongoing, Sergeant Miller testified that there may be over 200 persons solicited by Defendant for explicit photographs. The Court believes that Defendant's release pending further proceedings would constitute a danger to the community.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained pending further proceedings. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

## III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Court finds probable cause exists that Defendant committed the crime described in the Criminal Complaint.

2. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

3. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

4. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DATED this 30th day of October, 2014.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA